UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| SONNIE MORROW, as the next Friend for minor, ZION MOON MORROW, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Case No. 12-1131 |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, ) ) ) ) | |
| Defendant. ) | |

## **O R D E R**

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm. For the reasons set forth below, Plaintiff's Motion for Summary Reversal [10] is DENIED, and the Commissioner's Motion to Affirm [16] is GRANTED.

### BACKGROUND

Plaintiff, Zion Moon Morrow ("Zion"), was 10 years' old at the time of her administrative hearing. (R43) She lives with her mother and brother. (R44-45) Zion is home schooled, but had previously attended public school until the last semester of fourth grade. (R45)

Zion has Von Willebrand's Disease, a blood disorder similar to hemophilia that can result in excessive bleeding. (R46) She wears special shoes to prevent her feet from pronating and has been told that this condition will ultimately require surgery. Id. Her S1 vertebrae is not completely closed, and there are cysts on the inside of her spinal cord, causing back pain and migraines. Id. Zion also suffers from neurogenic bladder, which causes urgency in having to empty her bladder.

Id.  In addition, she has mental health issues and is seen by both a counselor and a psychiatrist. (R47) She has been diagnosed with Bipolar, Mixed Episodes.  Id.

Zion takes Abilify, Lortab, medicines for bleeding episodes, and a fiber supplement to help with her digestive issues.  (R48) She receives infusions to help with clotting when she has injuries, which was estimated to be 3-4 times in a two-month period.  Id.  Walking through a grocery store causes her pain in her feet, knees, and back.  (R54)  She takes Norco for this pain, which seems to reduce the pain to a tolerable level but never eliminates it completely.  Id.  Zion has migraine headaches about two times per week.  (R56)  When she is injured, her bones have trouble healing due to extra blood that accumulates in her joints.  (R55) She also has difficulty sitting in a chair for a long time because it is painful.  (R59)

In her free time, Zion likes to draw and color.  (R58)  Although Zion attended public school in the past, she is now home schooled.  Her mother testified that since beginning home schooling, Zion's performance has improved as a result of the increased personal attention that she receives. (R53) She has a hard time focusing without her mother's supervision.  Id.  Zion attends Sunday School almost every week, but she is shy and withdrawn and doesn't participate much unless specifically prompted. (R53, 58)  She likes to play outside a little bit, but other than a three-year-old cousin, she doesn't have much interaction with other children. (R53, 58)  When she has pain from a migraine or her back, she often needs to lay down for a few minutes.  (R56)

On January 7, 2008, Zion's mother applied for supplemental security income benefits ("SSI") on her behalf, alleging disability that began on March 1, 2000. (R10) The application was denied both initially and on reconsideration.  Id.  Zion requested a hearing before an administrative

law judge ("ALJ"). A hearing was held before ALJ Gerard Rickert on July 13, 2010, at which Zion, who was represented by counsel, and her mother appeared and gave testimony.

On October 29, 2010, the ALJ issued his decision. (R9) The ALJ found that Zion has the following severe impairments: Von Willebrand's disorder, recurrent headaches, spinal cysts, spina bifida occulta, and bipolar disorder. (R13) The ALJ determined, however, that Zion does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1. (R14) The ALJ found no limitation in the record with respect to cognitive impairment or the domain of acquiring and using information. (R17) The ALJ concluded that Zion has a less than marked limitation in the domain of attending and completing tasks based on school records, a psychiatric consultation with Dr. Frenkel on April 16, 2010, state agency childhood disability evaluations from November 2006, March 2008, and June 2008, as well as information from Zion's father that she did well at school, interacted with others at church, and was social. (R18-19) This same evidence was cited in support of the ALJ's finding that Zion had a less than marked limitation in the domains of interacting and relating with others and caring for herself. (R20-22) No limitation was found in her ability to move about and manipulate objects, and a less than marked limitation was found in the domain of health and physical well-being. (R21,23)

Based on the evidence of record, the ALJ concluded that Zion does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme limitation in one domain of functioning. (R29) He therefore found that she had not been disabled at any time since the filing of the application for benefits, and her request for benefits was denied. Id.

Zion submitted a Request for Review of Hearing Decision. The Appeals Council declined review of her claim, and the ALJ's decision became the final decision of the Commissioner. (R1-3) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to SSI and/or DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act for a minor under 18 requires a showing that a child has a "physical or mental impairment, which results in marked and severe functional limitations, and . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). This inquiry follows a three-step process. First, if the child is engaged in substantial gainful activity, his or her claim is denied. Second, if a child does not have a medically severe impairment or combination of impairments, the claim is denied. 20 C.F.R. § 416.924(a). Finally, there must be a factual determination that the impairment(s) meet, or are functionally equivalent to any of the Listings of Impairments contained in 20 C.F.R. pt. 404 subpt. P, App. 1.

In assessing whether impairments functionally meet or equal a listing, the Commissioner assesses the claimant's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for herself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). "Marked" limitations in two domains or an "extreme" limitation in one domain require a finding of

disability. 20 C.F.R. §416.926a(a). A "marked" limitation is one that interferes seriously with a child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2)(I).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).

In her appeal, Zion raises essentially two claims: (1) the ALJ misapprehended the listing of impairment rules when evaluating whether the claimant met the listing of impairments; and (2) the ALJ failed to build an accurate and logical bridge from the evidence to his ultimate conclusion. Each argument will be addressed in turn.

Zion first asserts that the ALJ misapprehended the Listing of Impairment Rules when evaluating her claim. Listing 107.08 requires: (1) repeated spontaneous or inappropriate bleeding; or (2) hemarthrosis with joint deformity. She argues that the ALJ believed she needed to show both bleeds and a joint deformity in order to satisfy the listing rather than one or the other. This argument is unavailing in that the ALJ's opinion clearly refers to these requirements in the disjunctive, using the word "or"; at no time in that discussion does the ALJ indicate that both bleeding and joint deformity are required.

Zion next argues that the ALJ's conclusion that she did not meet or equal the listing of impairments was not supported by much reasoning and did not evaluate her back pain or migraine headaches other than to mention them in passing. Specifically, Listing 107.08 for Inherited Coagulation Disorders requires repeated spontaneous or inappropriate bleeding or hemarthrosis with joint deformity. The ALJ's discussion immediately surrounding the listing is admittedly brief: "There is no evidence of repeated spontaneous or inappropriate bleeding or hemathrosis with joint deformity such that could meet the requirements of Listing 107.08." However, there is significant discussion of the impacts of her Von Willebrands blood coagulation disorder throughout the remainder of the decision.

There is no dispute that Zion has been diagnosed with Von Willebrand's disease. In November 2006, state agency physician Dr. Raymond Castaldo concluded that Zion's Von Willebrand's disease was a severe impairment, resulting in a "marked" impairment in the domain of health and physical well-being. (R458-60) On January 7, 2008, state agency physician Dr. Sandra Bilinsky agreed that Von Willebrand's disease was a severe impairment for Zion, but that her medical records did not reveal a history of spontaneous or inappropriate bleeding, resulting in a "less than marked" impairment. In June 2008, Dr. Julio Pardo, another state agency physician, reached the same conclusions as Dr. Bilinsky, noting that Zion had not needed an infusion for almost a year at that point. In September 2009, treating physician Dr. Tarantino noted that she was receiving either Humate-P or Stimate on an on-demand basis for bleeding episodes. (R823-24) However, when read in context, this entry does not support a finding that Zion was receiving infusions frequently or for any occasion that did not follow some type of specific injury. Rather, the entry indicates that Zion received treatment with infusions after being involved in an automobile accident and suffering

trauma to her head and chest in a fall; she denied any recent bleeding symptoms and was most recently treated more than six months prior to that exam.  Id.

The ALJ also considered the mother's testimony that Zion required infusions for her blood disorder at least three times per month, but then discounted that testimony as unsupported by medical records and other evidence.  He also referenced medical records where the parents reported no prolonged bleeding except following a cut when she was two year's old and reported no other bleeding symptoms beyond bruising.  He cites medical records from Dr. Tarantino in March 2007 documenting that Zion received a week of daily infusions following a snowboarding accident, from June 2008 revealing that another infusion was received after Zion was in a car accident, and from February 2009 indicating another infusion after she fell, injuring her head and chest.  The ALJ also observed that Zion had received one infusion in June 2010 after falling off her bike.

"Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in her decision to permit meaningful judicial review." Clifford v. Apfel, 227 F.3d 863, 870–71 (7th Cir.2000). In other words, the ALJ must build an "accurate and logical bridge from the evidence to" his conclusion. Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir.2002) (citation omitted).  Here, the ALJ's analysis was more than cursory.  Throughout the opinion, the ALJ made an exhaustive discussion of the medical records and evidence relevant to Zion's claim.  While there is no dispute that she suffers from several conditions, including an coagulation disorder, the medical evidence only supports a finding that Zion's bleeding episodes were not "spontaneous", but rather were caused by some form of specifically identifiable injury and did not occur with the degree of frequency testified to by her mother.

It is the province of the ALJ to resolve evidentiary conflicts. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 542 (7th Cir. 1992); Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). The existence of an evidentiary dispute is not grounds for reversing the ALJ's decision to credit one version of facts over another. Herr v. Sullivan, 912 F.2d 178, 181 n.4 (7th Cir. 1990) However, the ALJ must explain with particularity the basis of his decision. Young v. Secretary of Health and Human Services, 957 F.2d 386, 393 (7th Cir. 1992). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986). The credibility determinations of the ALJ in this case were explained with sufficient particularity and supported by substantial evidence in the record in accordance with SSR 96-7p.

Accordingly, while it is obvious that Zion suffers from several conditions that caused complications, the ALJ's conclusion that she does not suffer from marked limitations in two domains or extreme limitations in one domain will not be disturbed on the record before the Court.

## CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Reversal [10] is DENIED, and the Commissioner's Motion to Affirm [16] is GRANTED. This matter is now terminated.

ENTERED this 16th day of September 2013.

                                        s/ James E. Shadid
                                        James E. Shadid
                                        Chief United States District Judge